# United States Court of Appeals for the Federal Circuit

05-1537

VENTURE INDUSTRIES CORPORATION, VEMCO, INC.,
PATENT HOLDING COMPANY, and LARRY J. WINGET,

Plaintiffs-Appellees,

v.

AUTOLIV ASP, INC. (successor to Morton International, Inc.),

Defendant-Appellant,

and

AUTOLIV, INCORPORATED,

Defendant.

John E. Anding, Drew, Cooper & Anding, of Grand Rapids, Michigan, argued for plaintiffs-appellees. With him on the brief was Thomas V. Hubbard. Of counsel on the brief was Richard W. McLaren, Jr., Welsh & Katz, Ltd., of Chicago, Illinois.

Peter G. Greene, Skadden, Arps, Slate, Meagher & Flom LLP, of New York, New York, argued for defendant-appellant. With him on the brief was Cyrus Amir-Mokri. Of counsel on the brief was William H. Horton, Cox, Hodgman & Giarmarco, P.C., of Troy, Michigan.

Appealed from: United States District Court for the Eastern District of Michigan

Senior Judge Avern Cohn

# United States Court of Appeals for the Federal Circuit

05-1537

VENTURE INDUSTRIES CORPORATION, VEMCO, INC.,
PATENT HOLDING COMPANY, and LARRY J. WINGET,

Plaintiffs-Appellees,

v.

AUTOLIV ASP, INC. (successor to Morton International, Inc.),

Defendant-Appellant,

and

AUTOLIV, INCORPORATED,

Defendant.

_____

DECIDED:  August 7, 2006

_____

Before LINN, DYK, and PROST, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

Autoliv ASP, Inc. ("Autoliv") appeals the decision of the United States District Court for the Eastern District of Michigan denying Autoliv's motion for relief from judgment in favor of Venture Industries Corp., Vemco, Inc., Patent Holding Co., and Larry J. Winget (collectively "Venture"), pursuant to Federal Rule of Civil Procedure 60, sections (b)(2) and (b)(3).  <u>Venture Indus. Corp. v. Autoliv ASP, Inc.</u>, No. 99-75354

(E.D. Mich. July 15, 2005) (Judge Avern Cohn).[1] We conclude that the district court did not err in denying Autoliv's request under Rule 60(b)(2), but that the district court erred in failing to address whether Venture's use at trial of financial statements containing false information constituted "fraud, misrepresentation, or other misconduct" warranting relief under Rule 60(b)(3). Accordingly, we affirm in part, vacate in part, and remand.

BACKGROUND

This appeal presents the issue of whether the use of falsified information in financial statements by Venture's damages expert at trial entitles Autoliv to relief from judgment under either Rule 60(b)(2) or 60(b)(3) of the Federal Rules of Civil Procedure.

As part of the 1995 settlement of a patent dispute between Venture and Autoliv, Venture and Autoliv executed a supply agreement.[2] Under the supply agreement, Autoliv was obligated to purchase airbag covers from Venture so long as Venture was capable of filling the order and Venture's bids were "reasonably competitive" with the bids of other suppliers. In the period after 1995, Autoliv purchased some covers from Venture, but also acquired covers from other sources.

On November 3, 1999, Venture filed suit against Autoliv alleging that Autoliv breached the supply agreement with respect to 38 airbag cover projects either by not allowing Venture to bid on the projects or by rejecting Venture's reasonably competitive bids. Venture's complaint also stated several patent law claims, including claims for

---

[1]     On August 4, 2005, the district court issued an opinion explaining its reasons for denying Autoliv's Rule 60(b) motion. Venture Indus. Corp. v. Autoliv ASP, Inc., No. 99-75354 (E.D. Mich. Aug. 4, 2005) ("Rule 60(b) Opinion").

[2]     The supply agreement and two other agreements that were part of the settlement were executed by Venture and Morton International, Inc. (Autoliv ASP's predecessor in interest). Morton was acquired by and merged into Autoliv ASP in 1997. For convenience, we refer to both Morton International, Inc. and Autoliv ASP as "Autoliv."

correction of inventorship, declaratory judgment of unenforceability of patents Autoliv claimed to own, and declaratory judgment of infringement of patents Venture claimed to own. These claims were stayed by the district court pending the outcome of arbitration of these claims as required by a cross-license agreement, also executed as part of the settlement of the 1995 litigation. Other claims relating to the supply agreement were either stayed by stipulation of the parties or voluntarily dismissed.[3] Discovery and other pretrial proceedings took place for the next several years.

Discovery proved to be contentious. For this reason, on March 5, 2002, the district court appointed a Special Master to oversee discovery. On November 14, 2002, Autoliv submitted to Venture the following request for production of documents:

> Please produce each and every one of Venture's monthly, quarterly, and annual internal and external financial statements for the years 1995 to the present, whether reviewed, compiled or audited, and all documents relied upon, referred to, consulted or generated in preparing such statements, including your general ledgers, subsidiary ledgers, accounts payable and receivable ledgers, trial balances, accountants' work papers, bank statements, check registers and bank records. The term financial statements shall include, but is not limited to your balance sheets, income statements, profit and loss statements, cash flow statements, statements of net worth, statements of retained earnings and all notes to such financial statements.

J.A. at 648. Autoliv also requested financial information regarding the relationship between Venture and its subsidiaries. Venture responded that these requests "lack[ed] foundation in that Defendants have never contended Plaintiffs' financial condition was the basis for withholding the award of any program." J.A. at 668. Unsatisfied, Autoliv

---

[3] The other claims related to the supply agreement were for fraudulent inducement and misrepresentation, termination and cancellation of contract, accounting, unjust enrichment, and unfair competition. Venture also asserted claims for fraudulent inducement of the settlement of the 1995 litigation and misappropriation of trade secrets.

filed a motion to compel further responses on January 27, 2003. On March 10, 2003, the Special Master denied Autoliv's motion, concluding that "[r]equests for financial information in this lawsuit are appropriate, but these requests are overbroad." Rule 60(b) Opinion, slip op. at 6 (quoting Special Master report and recommendation).

On April 9, 2003, Autoliv, seeking additional financial information, filed a motion to compel the depositions of representatives of Venture and two of its subsidiaries pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. On September 23, 2003, the district court orally denied Autoliv's motion, concluding that "[a]ll of [Venture's] financial statements, its annual statements and its quarterly statements and its monthly statements should be produced," but that Autoliv's proposed deposition topic ("the basis for [the deponent's] contention that Venture's bid on each [project] would have been reasonably competitive with those quotes submitted by others") was "actually asking for Venture's position in the litigation." Id. at 6-7. The district court explained: "I prefer to wait until the final pretrial statement is prepared and we see which witnesses Venture is going to offer and the nature of their testimony . . . and then if there's some basis for asking that because you don't already have that, that's okay . . . ." Id. at 7.

Autoliv did not challenge or seek reconsideration of either the Special Master's or the district court's discovery rulings. Autoliv also did not submit further requests for the documents or alert the district court to any further problems with the discovery of Venture's financial information.

On November 4, 2003, trial began in Venture's action against Autoliv for breach of the Supply Agreement. Venture's expert witness on damages at trial was Aron Levko. To calculate Venture's damages, Levko relied on financial information from a

manufacturing facility in Grand Blanc, Michigan, operated by a Venture subsidiary, Vemco, Inc., which would have produced the airbag covers for the projects awarded to Venture under the supply agreement with Autoliv. Levko utilized Venture's actual bids, some third party bids, and two independent production cost studies commissioned by Venture in 1997 and 1998. The cost estimates in the bids on which Levko relied did not separate variable costs (e.g., the costs of material and labor) from fixed costs (e.g., general overhead). Levko needed to separate fixed from variable costs for two reasons: (1) In addition to claiming lost profits, Venture claimed the right to recover the fixed costs attributable to the contracts; and (2) Levko needed to assign the correct amount of variable costs to the hypothetical bids he constructed for programs where no bid was submitted. To do this, Levko used the ratio of fixed to variable costs reflected in Grand Blanc's plant-wide financial statements.

In order to compute the material cost component of the variable costs, Levko needed to calculate the amount of the purchased raw material that would become unusable scrap. To verify the accuracy of the material (scrap) costs reflected in the bids, Levko compared the scrap rate reflected in the bids (15 percent), against the scrap rate discernable from actual production data (approximately 11 percent), and the scrap rate reflected in Grand Blanc's plant-wide financial statements (12.4 percent). To be conservative, Levko used the bid scrap rate of 15 percent in his calculations. Based on the bid data, Levko calculated a contribution margin of 25 percent.

On December 4, 2003, the jury found that Autoliv had breached the supply agreement and awarded Venture $27,576,001 in damages. The district court entered

final judgment against Autoliv in the amount of the jury's verdict on January 20, 2004, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

During the discovery period, Venture filed for reorganization under the Bankruptcy Code. The bankruptcy court appointed Doeren Mayhew & Company, P.C. ("Doeren Mayhew"), a forensic accounting firm, to investigate certain aspects of Venture's financial condition, including "inter-company, shareholder and related party transactions." Rule 60(b) Opinion, slip op. at 3.[4]

After the entry of final judgment in this case, on March 10, 2004, Doeren Mayhew issued a report stating that "Venture had suffered multi-million dollar damages as a result of fraudulent related party transactions." Rule 60(b) Opinion, slip op. at 3-4. This conclusion called into question the representations in Venture's firm-wide financial statements.

On March 25, 2004, Doeren Mayhew issued a second report concerning the results of its "preliminary investigation of potential accounting irregularities." J.A. at 583. The report focused on Vemco and the Grand Blanc facility.[5] As noted, the books and records of that facility had been used by Venture's damages expert at trial. Doeren

---

[4] The scope of Doeren Mayhew's initial investigation included (1) investigating "related party transactions that have taken place with Venture for the six-year period, March 29, 1997 through March 28, 2003 . . . . to determine whether the transaction was considered on no less favorable terms to the Debtor than would be obtained if such transaction were an 'arms-length' transaction with a non-affiliated entity[,]" J.A. at 185; and (2) reviewing and identifying "preferential transfers to insiders or affiliated companies as defined by Code Section 547(b) of the United States Bankruptcy Code" during the twelve-month period preceding Venture's date of insolvency, May 28, 2002. J.A. at 187.

[5] Doeren Mayhew undertook this investigation after it was "notified in early March 2004 regarding potential accounting irregularities discovered by Venture's management at the company's Grand Blanc facility." J.A. at 583. The scope of the investigation was limited to the Grand Blanc facility's internal financial information.

05-1537                                    6

Mayhew discovered "questionable accounting procedures and practices," a "[l]ack of proper accounting controls," and "potential accounting irregularities" and "errors," and concluded (1) that Grand Blanc's "material cost may have been understated by approximately $700,000 on a monthly basis" during 2003, and (2) that "Grand Blanc had overstated its inventory on its financial records as of December 31, 2002 and 2003 by $2,800,000 and $2,500,000 respectively." J.A. at 584-85, 588. These misstatements resulted from an employee's manipulation of entries in the Grand Blanc facility's computerized accounting system and were reflected in reports generated by that system, including Grand Blanc's plant-wide financial statements. Doeren Mayhew's second report also called into question Venture's firm-wide financial statements, insofar as those statements were based in part on the inaccurate Grand Blanc plant-wide financial statements.

On April 5, 2004, Venture filed a Securities and Exchange Commission Form 8-K disclosing the information in the Doeren Mayhew reports. As to the related-party transactions addressed in the March 10, 2004 Doeren Mayhew report, the 8-K stated that Venture had filed a lawsuit seeking "[r]ecovery of payments to one or more of Defendants aggregating in excess of [$300,000,000]," J.A. at 591, and that as a result of the related-party transactions, "financial information previously publicly reported by Venture Holdings as far back as at least 1998 is unreliable and should not be relied upon by investors." J.A. at 592. As to the Grand Blanc accounting issues addressed in the March 25, 2004 Doeren Mayhew report, the 8-K stated that "[i]nvestigation by [Venture] and Doeren Mayhew disclosed . . . [a]pparent understatement of payables at the Grand Blanc facility during fiscal 2003 aggregating $8,000,000 -- $10,000,000 . . .

[and] [o]verstatement of inventory at the Grand Blanc facility during fiscal 2002 and 2003 in the range of $2,500,000 -- $2,800,000." J.A. at 592.

The Doeren Mayhew investigation was not immediately called to the district court's attention by either party. On April 7, 2004, the district court entered an amended final judgment in the amount of $33,459,134.84, adding prejudgment interest to the jury award. Autoliv appealed to the United States Court of Appeals for the Sixth Circuit, which transferred the appeal to this court on July 16, 2004. On October 4, 2004, we stayed the appeal to allow Autoliv the opportunity to file with the district court a motion for a new trial pursuant to Rule 60(b) based on the Doeren Mayhew reports. Autoliv filed its Rule 60(b) motion on October 21, 2004. Autoliv argued that the falsified financial information identified in the Doeren Mayhew reports constituted: (1) newly discovered evidence that could have affected the outcome of the trial, entitling Autoliv to a new trial pursuant to Rule 60(b)(2); and (2) "fraud, misrepresentation, or other misconduct of an adverse party" during discovery and the trial, entitling Autoliv to a new trial under Rule 60(b)(3).

After conducting an evidentiary hearing at which Levko testified that Doeren Mayhew's conclusions had no effect on his trial testimony, the district court denied Autoliv's Rule 60(b) motion. As to Rule 60(b)(2), the district court concluded that Autoliv failed to prove that the newly discovered financial information would have had an effect on the jury's decision on damages. As to Rule 60(b)(3), the district court held that Venture did not commit discovery misconduct by failing to produce financial information that Autoliv alleged would have disclosed the misrepresentations Doeren Mayhew uncovered in time for use at trial. Because the district court had earlier denied Autoliv's

motions to compel such production, and Autoliv neither challenged those rulings nor requested further disclosures of internal financial information from Venture, the district court concluded that there had been no discovery misconduct. The district court did not address Autoliv's request for relief under Rule 60(b)(3) based on Levko's trial testimony.

Autoliv timely appealed from the district court's disposition of the Rule 60(b) issues.[6] Because Venture's complaint asserted claims under the patent laws, we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). The ruling of a district court under Rule 60(b) is final and appealable pursuant to 28 U.S.C. § 1292. Ashland Oil, Inc. v. Delta Prods. Corp., 806 F.2d 1031, 1032 (Fed. Cir. 1984). At oral argument, we requested supplemental briefing as to the legal standard applicable to Autoliv's Rule 60(b)(3) request.

DISCUSSION

The denial of a motion for a new trial under Rule 60(b) is reviewed for abuse of discretion. Good v. Ohio Edison Co., 149 F.3d 413, 423 (6th Cir. 1998); Mallory v. Eyrich, 922 F.2d 1273, 1279 (6th Cir. 1991). "An abuse of discretion will be found if the district court relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard." United States v. Chambers, 441 F.3d 448, 455 (6th Cir. 2006).

We address Autoliv's Rule 60(b)(2) and Rule 60(b)(3) arguments separately.

---

[6] We lifted the stay, allowing Autoliv's appeal from the jury verdict and final judgment (nos. 04-1486 and 04-1488) to proceed. In an opinion also issued today, we affirm the judgment on the merits, subject to the remand proceedings that we order in this appeal. As to Venture's cross appeal, we vacate the district court's award of prejudgment interest and remand to the district court. Venture Indust. Corp., et al. v. Autoliv ASP, Inc., Nos. 04-1486, -1488 (Fed. Cir. August 7, 2006).

As a threshold matter, we reject Venture's contention that Autoliv's motion was untimely. Rule 60(b) provides that motions "shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." Autoliv filed its Rule 60(b) motion on October 21, 2004, nine months after the entry of judgment on January 20, 2004. Though the district court accepted Autoliv's motion without comment, Venture argues here that the nine-month delay was unreasonable under Rule 60(b).

The Sixth Circuit has held that whether the time of filing a Rule 60(b) motion was reasonable "is dependent upon the facts in a case, including length and circumstances of delay in filing, prejudice to opposing party by reason of the delay, and circumstances warranting equitable relief." In re G.A.D., Inc., 340 F.3d 331, 334 (6th Cir. 2003).[7] Here, Venture makes no colorable claim that it was prejudiced by Autoliv's delay. Further, Venture itself was likely under an obligation to promptly notify the district court of the inaccuracies in Levko's testimony. See Mich. R. Prof'l Conduct 3.3(a)(4), adopted by reference E.D. Mich. Local R. 83.22(b) ("If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."); see also Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1205 (Fed. Cir. 2005) ("Once counsel became aware that highly material false statements had been made by a witness, in pleadings submitted to the court and in

---

[7] One exception (not pertinent here) applies to Rule 60(b)(1) motions predicated upon alleged errors of law, for which the Sixth Circuit has held that the "reasonable time" is limited to the time for filing a notice of appeal. Barrier v. Beaver, 712 F.2d 231, 234-35 (6th Cir. 1983).

response to discovery requests . . . Schreiber and its counsel were under an obligation to promptly correct the record.").

Rule 60(b)(2) provides, in pertinent part: "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2) (West 2006). "In order to prevail on a Rule 60(b)(2) motion, a movant must demonstrate . . . that the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." Good, 149 F.3d at 423 (internal quotation marks, brackets, and citation omitted).

Autoliv argues that the Doeren Mayhew reports constitute newly discovered evidence that undercut the accuracy of Levko's testimony, entitling Autoliv to a new trial under Rule 60(b)(2). At the evidentiary hearing on Autoliv's motion, Levko testified in detail that Doeren Mayhew's findings had no effect on his assessment of Venture's damages because, in making his calculations, he did not rely primarily on information from the Grand Blanc facility's main accounting system or the plant-wide financial statements. Instead, he relied principally on information from the Grand Blanc facility's "bid" (or "quote") system. Both Levko and Autoliv's expert, Glenn Sheets, testified that the bid system was separate and independent from the accounting system and that the information from the bid system was not called into question by the Doeren Mayhew reports. The district court found that "Autoliv has not made out a case for a finding that had the accounting irregularities described in the March 25 Doeren Mayhew report been

known prior to trial, Levko's opinion and conclusion on damages would have produced a different result at trial with regard . . . to damages." Rule 60(b) Opinion, slip op. at 18.

Autoliv insists that the district court, in making findings of fact and determinations of the weight and credibility of the evidence, rejected Autoliv's Rule 60(b)(2) motion based on the district court's own judgment rather than the probable effect of the evidence on the jury. We disagree. The district court expressly assessed the probable effect on the jury, stating: "It cannot be said that if the jury was presented with the Doeren Mayhew reports . . . its decision on damages would have been any different." Id. at 20. The district court reviewed the factual record in the light of the newly discovered evidence and made findings as to the weight of that evidence to determine what the effect on the jury likely would have been. Analysis of the record is necessary to resolve a Rule 60(b)(2) request.[8]

Autoliv also challenges several of the district court's specific findings regarding the effect of the accounting irregularities on Levko's testimony. Autoliv questions the bid system information that Levko used primarily in calculating Venture's damages. The bid information was obtained from the Grand Blanc facility's separate bid system. The district court found that this information "was separate and independent from the Grand Blanc facility plant-wide financial data" implicated by the Doeren Mayhew reports, id. at 18, and "was specific and reliable." Id. at 10. Levko relied on Venture's bids on Autoliv projects that were submitted before 2002, whether accepted or not. For projects that

---

[8] See, e.g., Daniels v. Pipefitters' Ass'n Local Union No. 597, 983 F.2d 800, 802-03 (7th Cir. 1993) ("[I]t is only logical that a district court weigh the credibility of evidence before granting or denying a Rule 60(b)(2) motion. Rule 60(b)(2) motions are decided by judges; not by juries. Credibility determinations are necessary to these decisions. To hold otherwise would mean that the district court would have to order a new trial no matter how incredible the new evidence.").

Venture did not actually bid on, Levko created hypothetical bids using data from submitted bids and five third-party bids.

Autoliv points out that the erroneous Grand Blanc financials were the result of a "lack of proper accounting controls." J.A. at 588. It argues that because there were errors in the Grand Blanc facility's financial statements for 2002-2003, "[t]he only reasonable inference to be drawn . . . is that [Venture's accounting] controls were not appropriate during that earlier time period either." Reply Br. of Autoliv at 25. Autoliv contends that this inference undercuts the reliability of the pre-2002 bid data Levko used. The district court concluded, however, that "Levko's opinion on damages was grounded on bids that antedated December 31, 2001," and that "[t]here is no evidence to suggest that the accounting irregularities at the Grand Blanc facility . . . affected Venture's 1996-2001 financial statements." Rule 60(b) Opinion, slip op. at 20. We see no clear error in these factual conclusions.

Autoliv also contends that a new trial should have been granted because Levko relied, in some of his testimony, on the fact that the Grand Blanc facility's plant-wide financial statements were audited and therefore presumptively reliable. Levko testified at trial that the fact that Grand Blanc had independently certified plant-wide financial statements "tells me [that] what's being reported is fair . . . [and that] the internal controls are appropriate and adequate . . . ." Rule 60(b) Opinion, slip op. at 11 n.4. At the Rule 60(b) hearing, the district court questioned Levko about whether having the information in the Doeren Mayhew reports concerning the Grand Blanc financial statements would have altered his trial testimony. Levko responded "I couldn't say that

the certified statements were accurate, but it wouldn't change my conclusions." J.A. at 130.

Autoliv contends that even if Levko's conclusions would have remained the same, these alterations to Levko's testimony might have "colored" the trial. While the district court's Rule 60(b) opinion did not expressly address this possibility, the district court specifically recognized it during the Rule 60(b) hearing, and we are convinced that the district court considered the question and rejected Autoliv's contention utilizing the Rule 60(b)(2) standard for prejudice. We see no error in that conclusion.

Although Autoliv agrees that the Grand Blanc accounting system was separate from the bid system, Autoliv argues that financial information directly called into question by Doeren Mayhew was utilized by Levko in two respects: (1) to determine the ratio of fixed to variable costs; and (2) to test the accuracy of the scrap rate reflected in the bids.

As to the first, Autoliv contends that Levko's separation of the fixed and variable costs was affected because Doeren Mayhew found that inventory was overstated and recommended a downward inventory adjustment. Levko explained that a downward inventory adjustment would increase the cost of sales to the Grand Blanc facility, potentially altering the ratio of fixed and variable production costs. Levko stated in an affidavit that Doeren Mayhew's findings did not affect his allocation of fixed and variable costs in the bid data because the inventory adjustment would not materially affect the ratio. The district court explained that of the $2.5 million inventory adjustment, "$888,000 consisted of non-air bag inventory which had no effect on the cost of sales related to air bag covers. Of the $1.6 million dollar balance, approximately 25% could

be attributed to the cost of sales of air bag cover products." Rule 60(b) Opinion, slip op. at 5. The district court concluded that, while Levko determined the fixed-to-variable cost ratio from Grand Blanc's plant-wide financial statements, "any change in the financial statements as a consequence of the Doeren Mayhew reports did not affect the allocation." Id. at 12. We see no error in this conclusion.

As to the scrap rate, Levko used a scrap rate of 15 percent in his calculations. He derived that scrap rate from the bid information. Levko checked the bid-based scrap rate against the plant-wide scrap rate reported in Grand Blanc's plant-wide financial statements. That figure was 12.4 percent. He nevertheless used the 15 percent rate from the bids in order to make his calculations conservative. Autoliv relies on the affidavit of Kevin Dages, an accounting consultant, to argue that the inventory adjustments recommended by the Doeren Mayhew reports would have resulted in increased scrap rates for 2002 and 2003. Levko testified, however, that even assuming the inventory adjustment, the plant-wide scrap rate (only partially attributable to airbag cover production) would increase to 13.4 percent, still well below the 15 percent rate Levko used. The district court explained in detail that it rejected Dages' analysis on the basis of several methodological flaws, including Dages' calculation of increases in "[p]roduction costs based on plant-wide financial data [which] does not particularize air bag production costs." Rule 60(b) Opinion, slip op. at 19. The district court found that even after making the inventory adjustment called for by the Doeren Mayhew reports, "the plant-wide scrap rate would be 13.4%, still below the 15% rate Levko used," id. at 13, and thus concluded that the Doeren Mayhew reports' effect on the scrap rate would not have altered the jury's decision. We find no clear error in this determination. The

district court also did not err in failing to consider the totality of the allegedly prejudicial evidence.

Clear error only exists if we are "'left with a definite and firm conviction that a mistake has been committed.'" United States v. Monumental Life Ins. Co., 440 F.3d 729, 732 (6th Cir. 2006) (quoting Alexander v. Local 496, Laborers' Int'l Union of N. Am., 177 F.3d 394, 402 (6th Cir. 1999)). Here, we are left with no such conviction. We conclude that the district court did not abuse its discretion in denying Autoliv's motion for a new trial pursuant to Rule 60(b)(2).

II

We now address Autoliv's Rule 60(b)(3) motion. Rule 60(b)(3) provides: "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . ."

A

Autoliv argues that Venture engaged in discovery misconduct by withholding "Venture's non-public financial information—the data that ultimately disclosed Venture's fraud." Autoliv's Rule 60(b) Motion at 2. Autoliv contends that Venture should have disclosed the information in response to Autoliv's document-production requests and through the deposition testimony of representatives of Venture and pertinent Venture subsidiaries. In particular, Autoliv contends that it was denied the opportunity to depose the controller at the Grand Blanc facility who, according to Doeren Mayhew,

manipulated the accounting system to cause the misrepresentations in the financial statements.

Failure to produce material in response to legitimate discovery requests can constitute misconduct under Rule 60(b)(3). Abrahamsen v. Trans-State Express, Inc., 92 F.3d 425, 428 (6th Cir. 1996).[9] However, the question is not whether Venture failed to comply with Autoliv's initial discovery requests; it is whether Venture complied with Autoliv's requests as limited by the Special Master and the district court. There is no contention that Venture failed to comply with the discovery ordered by the district court. As the district court stated, "Autoliv had ample opportunity to ask the Court to require further of Venture if it felt that its discovery requests [were] not being met." Rule 60(b) Opinion, slip op. at 7. Autoliv did not request further action from the district court in this regard. We conclude that the district court did not abuse its discretion in holding that Venture did not engage in discovery misconduct within the meaning of Rule 60(b)(3).[10]

B

We now turn to Autoliv's contention that reliance on the financial statements by Venture's damages expert warrants relief under Rule 60(b)(3). As a threshold matter, Venture insists that Autoliv failed to raise this ground before the district court. Based on our examination of the record, we conclude that the issue was properly raised in Autoliv's Rule 60(b)(3) motion.

---

[9] See also Summers v. Howard Univ., 374 F.3d 1188, 1193 (D.C. Cir. 2004); Cummings v. Gen. Motors Corp., 365 F.3d 944, 955 (10th Cir. 2004); Schultz v. Butcher, 24 F.3d 626, 630 (4th Cir. 1994); Stridiron v. Stridiron, 698 F.2d 204, 207 (3d Cir. 1983); Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978).

[10] We note that Autoliv does not contend that Venture engaged in any misconduct in opposing the discovery requests.

Autoliv's contention here is based on the same grounds as its request under Rule 60(b)(2): (1) Levko's reliance on the bid data; (2) Levko's testimony that the Grand Blanc facility's certified financial statements gave him comfort about Venture's accounting controls; and (3) Levko's reliance on the Grand Blanc plant-wide financial statements to derive the fixed/variable cost ratio and check the bid-based scrap rate for his damage calculations.

The district court did not address Autoliv's Rule 60(b)(3) contention with respect to Levko's testimony. The district court did, however, hold that Autoliv failed to establish prejudice according to the Rule 60(b)(2) standard. Thus, even if Autoliv could establish fraud, misrepresentation, or other misconduct, the district court's failure to address Autoliv's Rule 60(b)(3) contention as to Levko's testimony could only constitute harmful error if the standard for prejudice under Rule 60(b)(3) is different from the standard for prejudice under Rule 60(b)(2). We conclude that the standard for prejudice is indeed different under the two rules, and thus that the district court's error was potentially harmful.

At oral argument, we requested supplemental briefing from both parties addressing the appropriate standard for relief under Rule 60(b)(3) in the Sixth Circuit. Venture argues that the issue is controlled by the Sixth Circuit's decision in Abrahamsen. While the court stated that relief is appropriate where a witness testifies falsely and "without [the false testimony], a jury might have reached a different conclusion," Abrahamsen, 92 F.3d at 428 (internal quotation marks omitted), the court

did not clearly articulate a general standard for determining prejudice.[11] Nor does any other published Sixth Circuit decision.

Autoliv contends that the appropriate rule is stated in <u>Jordan v. Paccar, Inc.</u>, No. 95-3478, 1996 WL 528950 (6th Cir. 1996), an unpublished decision. In the Sixth Circuit, only published decisions are binding on the court;[12] unpublished decisions may be persuasive authority depending on their pertinence and depth of reasoning. <u>Harper v. Autoalliance Int'l, Inc.</u>, 392 F.3d 195, 205 n.3 (6th Cir. 2004).[13] Autoliv urges that we should rely on <u>Jordan</u> because the court in <u>Jordan</u> thoroughly analyzed the question of the proper legal standard under Rule 60(b)(3). <u>See</u> 1996 WL 528950, at *6-*9. We agree. The court in <u>Jordan</u> set forth the legal standard applicable under Rule 60(b)(3) based on thorough analysis of the language of the rule and its treatment by other circuits. Thus, we conclude that relying on <u>Jordan</u> is appropriate under the circumstances.

In some circuits, the standard for prejudice under Rule 60(b)(3) requires the movant to demonstrate that the fraud or misconduct "prevented the moving party from fully and fairly presenting his case." <u>Schultz</u>, 24 F.3d at 630; <u>see also</u> <u>Anderson v.</u>

---

[11] Prejudice was obvious in <u>Abrahamsen</u> because the district court expressly held that it would not have found the plaintiffs contributorily negligent absent the false testimony. <u>Id.</u> at 428-29.

[12] <u>United States v. Wood</u>, 364 F.3d 704, 725 (6th Cir. 2004); <u>S.J. v. Hamilton County, Ohio</u>, 374 F.3d 416, 423 n.5 (6th Cir. 2004); <u>Sheets v. Moore</u>, 97 F.3d 164, 167 (6th Cir. 1996); <u>see also</u> Sixth Cir. R. 206(c) ("Reported panel opinions are binding on subsequent panels.").

[13] <u>See also</u> Sixth Cir. R. 28(g) (citation of unpublished opinions is "disfavored," but permissible "[i]f a party believes . . . that an unpublished disposition has precedential value in relation to a material issue in a case, and that there is no published opinion that would serve as well . . . ."); <u>Oviedo v. Jago</u>, 809 F.2d 326, 329 n.3 (6th Cir. 1987) (relying on unpublished decision because "the panel's reasoning [is] sound and its decision supported by the existing law").

<u>Cryovac, Inc.</u>, 862 F.2d 910, 924 (1st Cir. 1988).[14] The Sixth Circuit in <u>Jordan</u>, however, "dispens[ed] with any requirement that the moving party demonstrate prejudice," <u>Jordan</u>, 1996 WL 528950, at *8, holding that "prejudice should be presumed[ ] once the moving party has shown by clear and convincing evidence that misbehavior falling into one or more of the three categories set out in Rule 60(b)(3) has occurred." <u>Id.</u> The burden then shifts to the non-moving party "to demonstrate by clear and convincing evidence that the misbehavior which occurred had <u>no prejudicial</u> effect on the outcome of the litigation." <u>Id.</u>

As we noted earlier, under Rule 60(b)(2) the <u>moving party</u> must show that the newly discovered evidence, if introduced at trial, "clearly would have produced a different result if presented before the original judgment." <u>Good</u>, 149 F.3d at 423. The prejudice standards of Rule 60(b)(3) and Rule 60(b)(2) thus differ as to the party that initially bears the burden of proof, and as to the nature of the necessary showing. The district court analyzed the possibility of prejudice from Levko's testimony only under the Rule 60(b)(2) standard.[15] It did not apply the standard for prejudice that we conclude is applicable to Autoliv's Rule 60(b)(3) request with respect to Levko's testimony.

---

[14]    <u>See also</u> <u>Cummings</u>, 365 F.3d at 955; <u>Sellers v. Mineta</u>, 350 F.3d 706, 715 (8th Cir. 2003); <u>Tobel v. City of Hammond</u>, 94 F.3d 360, 362 (7th Cir. 1996); <u>Diaz v. Methodist Hosp.</u>, 46 F.3d 492, 496 (5th Cir. 1995); <u>In re M/V Peacock</u>, 809 F.2d 1403, 1404-05 (9th Cir. 1987); <u>Stridiron</u>, 698 F.2d at 207; <u>GAF Corp. v. Transamerica Ins. Co.</u>, 665 F.2d 364, 371 (D.C. Cir. 1981).

[15]    "Autoliv has not made out a case for a finding that had the accounting irregularities described in the March 25 Doeren Mayhew report been known prior to trial, Levko's opinion and conclusion on damages would have produced a different result at trial with regard . . . to damages." <u>Rule 60(b) Opinion</u>, slip op. at 18; <u>see also</u> <u>id.</u> at 20 ("It cannot be said that if the jury was presented with the Doeren Mayhew reports, particularly the March 25 Doeren Mayhew report, its decision on damages would have been any different.").

We conclude that we must vacate in part the district court's denial of Autoliv's Rule 60(b)(3) motion as it concerned Levko's testimony and remand for adjudication under the proper legal standard. In doing so, we do not address the question of whether Levko's testimony constitutes "fraud, misrepresentation, or other misconduct" within the purview of Rule 60(b)(3); that is a question best addressed by the district court in the first instance.[16] On remand, the district court must decide whether Autoliv has established, by clear and convincing evidence, that reliance upon Venture's financial information by Venture's damages expert constituted fraud or misrepresentation. If Autoliv makes such a showing, the district court must consider whether Venture established, by clear and convincing evidence, that the misbehavior had <u>no</u> prejudicial effect on the outcome of the litigation.

III

In summary, we affirm the district court's denial of Autoliv's motion for a new trial pursuant to Rule 60(b)(2). We also affirm the district court's conclusion that Autoliv is not entitled to a new trial under Rule 60(b)(3) on the basis of discovery misconduct. But because the district court did not consider Autoliv's allegation with respect to Levko's testimony as a ground for relief under Rule 60(b)(3), we vacate the district court's denial of Autoliv's Rule 60(b)(3) motion and remand for further proceedings consistent with this opinion.

---

[16] In this connection, we do not decide—one way or the other—whether, as the district court correctly held in connection with the alleged discovery misconduct issue, "there is no evidence that Venture was aware of the accounts payable understatement or inventory overstatement that Doeren Mayhew describes . . . in its March 25 report." <u>Rule 60(b) Opinion</u>, slip op. at 8. We have rejected the discovery argument on a different ground—that the failure to produce documents that would reveal the fraud was not misconduct.

CONCLUSION

The decision of the district court is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

COSTS

No costs.