NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1486, -1488

VENTURE INDUSTRIES CORPORATION, VEMCO, INC.,
PATENT HOLDING COMPANY, and LARRY J. WINGET,

Plaintiffs-Cross Appellants,

v.

AUTOLIV ASP, INC. (successor to Morton International, Inc.),

Defendant-Appellant,

v.

AUTOLIV, INCORPORATED,

Defendant.

_____

DECIDED: August 7, 2006

_____

Before LINN, DYK, and PROST, Circuit Judges.

PROST, Circuit Judge.

Venture Industries Corp. ("Venture") sued Autoliv ASP ("Autoliv") for breach of contract. The contract was a Supply Agreement that had been entered into as part of the settlement of previous litigation between Venture and Morton International ("Morton"), the predecessor in interest to Autoliv. The trial was complicated by the fact that aside from the breach of Supply Agreement claim, many other claims relating to

other agreements resulting from the settlement had been stayed pending arbitration. In particular, claims arising from a Cross Licensing agreement were stayed including claims disputing who between Autoliv and Venture owned various technologies. This complication led to numerous evidentiary rulings relating to testimony addressing any technology ownership issue. As the district court did not err in these evidentiary rulings, we affirm the district court's rulings. Ultimately, the jury found that Autoliv had breached the Supply Agreement and Venture was awarded $27,576,001 in damages and $5,878,972 in resulting prejudgment interest. The district court did err in calculating the accrual date of prejudgment interest. In this case, the proper date to calculate prejudgment interest is the date of filing the complaint. We therefore vacate the district court's calculation of prejudgment interest and remand the case to re-calculate the prejudgment interest consistent with this opinion. Even though other claims remain pending in this suit, we have jurisdiction over this appeal because the district court entered judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure as to the breach of contract claim.

**I.**

After the entry of final judgment, Autoliv filed a motion for a new trial pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The district court's denial of that motion is the subject of a separate appeal, which we also resolve today. Venture Indus. Corp. v. Autoliv ASP, Inc., No. 05-1537 (Fed. Cir. Aug. 7, 2006). In the companion case, we vacate and remand as to Autoliv's request for a new trial pursuant to Rule 60(b)(3). Id., slip op at 21-22. Our affirmance of the judgment below and our remand

for the re-computation of interest in this case are, of course, subject to the outcome of the proceedings on remand in the companion case.

Autoliv is the successor in interest to the Automotive Safety Products Unit of Morton International, Inc. Morton was a 'tier one' supplier of safety restraint systems to the automotive industry meaning that it directly supplied safety restraint systems to car and truck manufacturers. Venture was, on the other hand, a 'tier two' supplier because it supplied components to 'tier one' suppliers. Venture custom molded plastics, including air bag covers. From 1990 to 1995, Venture supplied Morton with air bag covers.

In 1995, Venture sued Morton in the Eastern District of Michigan asserting that Morton had misappropriated intellectual property relating to air bag cover technology owned by Venture. Morton counter-claimed asserting ownership of the technology. On December 31, 1995, Morton and Venture settled the case by entering into a Settlement Agreement containing two separate agreements: a Cross License Agreement and a Supply Agreement. The Cross License Agreement permitted each party to use the other's claimed technology. One relevant provision of the Cross License Agreement addressed the procedures for resolving any disputes arising from the Cross License Agreement:

> If a dispute arises between the parties relating to [the Cross License Agreement] they shall use the following procedure prior to either party's pursuing any other available remedy:
> . . .
> (b) If the dispute relates to the inventorship and/or ownership of Subject Technology or whether any particular Invention constitutes Subject Technology, or whether Subject Technology constitutes Solely or Jointly Owned Subject Technology, the dispute shall be submitted to binding arbitration . . . .

The other agreement that formed part of the settlement was the Supply Agreement. It allowed Venture to place bids on all of Morton's future air bag cover programs and provided that Venture would be awarded those contracts where Venture's bids were "reasonably competitive." The Supply Agreement stated that:

> (a) Morton shall give [Venture] the opportunity to quote on all of Morton's world wide future Cover programs awarded to it by its customers . . . excluding, however, such future cover programs (i) for which Morton has been directed by its customer to use a source other than [Venture] or has been directed by its customer not to use [Venture], (ii) for which [Venture], in Morton's reasonable judgment, does not have the capability at the time of quotation to meet their requirements for the particular program(s) under consideration; and (iii) which Morton has elected, in its sole discretion, to retain internally for manufacture by Morton itself.

> (b) All timely quotes received from [Venture] for programs described in subsection (a) above, shall be compared by Morton to quotes received from other established module cover suppliers for the same program(s). Provided [Venture's] quote is reasonably competitive (as determined in good faith by Morton taking in to account price, terms, quality, ability to meet qualification requirements and delivery dates and other objective factors related to competitiveness), it shall be awarded such program(s).

On November 3, 1999, Venture once again sued Morton and Autoliv as the successor in interest to Morton, alleging that they had breached the Supply Agreement and the Cross License Agreement and also alleging patent infringement and misappropriation of trade secrets. Of all the claims in the amended complaint, only the claim for the breach of the Supply Agreement was fully adjudicated. All remaining claims were either stayed or dismissed. In particular, as the Cross License Agreement contains a mandatory binding arbitration requirement, the claims that arose out of disputes over the Cross License Agreement have been stayed pending the outcome of arbitration. As the claim for breach of the Supply Agreement did not arise from the Cross License Agreement, this claim was neither stayed nor taken up in the arbitration.

On October 23, 2003, prior to trial, Autoliv filed a motion in limine to exclude, inter alia, evidence referencing the earlier lawsuit, the resulting Settlement Agreement and the Cross License Agreement. It argued such evidence was irrelevant, unfairly prejudicial, and impermissible character evidence as the 1995 case and the Cross License Agreement has "no relevance and no relationship" to this case. On October 29, 2003, the district court held a pre-trial conference addressing, among other things, Autoliv's motion in limine. The district court ruled that Venture and Autoliv would prepare a stipulation of facts describing the facts leading to the formation of the Supply Agreement and stated that the stipulation "can be done in lieu of testimony, but I'm not going to shade the testimony and I'm not going to confine [Venture] to the four corners." The resulting stipulation of facts was read to the jury at the start of trial on November 4, 2003 and stated that

> between 1990 and 1995, Venture had a relationship with Morton under which Venture manufactured air bag covers which it sold to Morton. Next, in 1995, Venture and Morton had a falling out which resulted in Venture suing Morton. Next, on December 31, 1995, the lawsuit was settled. A component of the settlement was a supply agreement pursuant to which Morton agreed to permit Venture to bid on [some] of Morton's air bag cover programs . . . .

On the third day of trial, the district court re-visited the evidentiary issue and ruled on the scope of evidence that could be admitted regarding the settlement of the prior litigation. Along similar lines, on the fourth day of the trial, the district court again explained the type of evidence that could be admitted stating that "I think Venture is entitled to explain what the essence of the prior dispute was about so the jury can understand fully how that prior dispute was settled. All they know now is it was a dispute between Morton and Venture." Based on these evidentiary rulings, Venture introduced testimony

04-1486, -1488                                     5

relating to the origins of the Supply Agreement and relating to Venture's licensing practices with third party air bag suppliers. Autoliv moved to have the court issue a limiting instruction as to this testimony but the district court denied the motion. Autoliv also requested a specific jury instruction that placed the burden on Venture to establish that its quotes were reasonably competitive with the quotes from other suppliers but the district court declined to use Autoliv's jury instruction.

Ultimately, the case went to the jury and, on December 4, 2003, the jury found that Autoliv had breached the Supply Agreement with respect to thirty three of thirty eight air bag programs and it awarded Venture $33,459,135 in damages. That damage award included $5,878,972 in prejudgment interest where the interest was calculated from the date the damages were incurred.

Autoliv appeals the district court's evidentiary rulings, the district court's refusal to give a limiting instruction, and the district court's refusal to use Autoliv's jury instruction. Venture cross-appeals the district court's failure to award prejudgment interest from the date of filing the complaint rather than from the date the damages accrued.

**II.**

As to the question of whether evidence was properly admitted at trial is a procedural question, the regional circuit law controls the issue. Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1390-91 (Fed. Cir. 2003). In the Sixth Circuit, a district court's decision to admit or exclude evidence is reviewed for abuse of discretion. Beck v. Haik, 377 F.3d 624, 636 (6th Cir. 2004). Jury instructions are reviewed "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." Beard v. Norwegian Caribbean

Cruise Lines, 900 F.2d 71, 72 (6th Cir. 1990). A district court's decision whether to use a party's jury instruction is reviewed for abuse of discretion. Hisrich v. Volvo Cars of N. Am., Inc., 226 F.3d 445, 449 (6th Cir. 2000).

On appeal, Autoliv argues that the district court erred in three ways. First, it contends that Venture's references to technology ownership were prejudicial and should have been excluded. Second, once this evidence was admitted, Autoliv contends that the district court erred by refusing to give a limiting instruction covering the admitted evidence. Lastly, Autoliv argues that the trial court erred by refusing to use Autoliv's jury instruction.

**A.**

As to the initial evidentiary rulings, Autoliv argues that the district court improperly expanded its initial decision to limit technology evidence when it allowed two particular pieces of evidence. First, Autoliv objects to the testimony of Mr. Torakis who regarded the Supply Agreement as the quid pro quo for the Cross Licensing Agreement stating that "[Venture] wanted business, [Morton] wanted our ideas that was the deal." Autoliv also objects to the testimony of Mr. Winget who testified that third party suppliers like Toyota Gosei and TRW had paid Venture a license fee of fifty cents per air bag cover for Venture's technology. Autoliv contends that this testimony unfairly prejudiced Autoliv because evidence of a quid pro quo arrangement or of licensing payments suggests that Venture owned the air bag technology.

The district court was well within its discretion to allow testimony especially where it felt it was needed to illuminate central issues to the case provided that "the judge inform[s] the parties and give[s] them an opportunity to present evidence relating to the

newly revived issue." <u>Huss v. King Co.</u>, 338 F.3d 647, 651 (6th Cir. 2003). It is clear from the record that where the district court revisited the scope of the testimony because it was necessary for the jury's understanding, it also allowed the parties recourse to adjust their litigation strategies regarding this testimony. For example, on November 6, 2003, the district court stated that

> at an earlier time in this case I made a ruling, and I don't know whether any part of it was reserved, that the supply agreement was a stand-alone agreement and excluded any evidence of the cross-license agreement or the settlement agreement of the litigation.
> Based on the testimony I've heard over the last two days, I think that ruling was too restrictive. I don't think this jury is capable of understanding the supply agreement . . . . I can't understand why anybody would enter into such an agreement without knowing that there was a lawsuit, there was a settlement of the lawsuit, and the settlement of that lawsuit included both the cross-license agreement, because it was a dispute over technology, and included the supply agreement . . . . [T]hat doesn't mean a wide-ranging inquiry can be made into it, but . . . on a limited basis, I will allow testimony on the settlement agreement and on the litigation . . . .

In response to this change, Mr. Horton, counsel for Autoliv asked, "Obviously the scope of this is now changing dramatically. I may want to call a witness regarding the cross-licensing agreement." The judge responded, "You can. You can do anything you want. In light of this ruling, if anyone wants to amend the witness list or the exhibit list, they can do so."

Second, Autoliv argues that, once evidence of technology ownership was admitted, the district court erred by not granting Autoliv's request for a limiting instruction as to the technology ownership evidence. We do not agree with Autoliv. Autoliv requested a limiting instruction that two exhibits, Plaintiff's Exhibits 129a and 130, were being introduced to demonstrate Autoliv's ownership over the technology. As stated by the district court the exhibits were admitted to demonstrate Autoliv's

manufacturing capabilities and included no "claim to proprietorship [and] no claim to ownership." We discern no clear error in the district court's refusal to give the limiting instruction.

Third, and lastly, as to the jury instruction, Autoliv argues that the district court erred by refusing to grant its more specific instruction which stated that Venture bore the burden of establishing that the exclusions in the Supply Agreement did not apply. "[A] district court's refusal to give a jury instruction constitutes reversible error if: '(1) the omitted instructions are a correct standard of the law; (2) the instruction is not substantially covered by other delivered charges; (3) the failure to give the instruction impairs the requesting party's theory of the case.'" Webster v. Edward D. Jones & Co., 197 F.3d 815, 820 (6th Cir. 1999). The instruction that was read to the jury stated:

> Venture has the burden of proving each of the following propositions. First, that Venture performed all obligations required of it under the contract. Second, that Autoliv ASP failed to perform its obligations under the contract and breached the contract. Third, as a result of the breach of the contract, Venture was damaged. Autoliv ASP has the burden of proving it qualified for any exclusion set forth in the Supply Agreement which it maintains absolved it of an obligation under the Supply Agreement.

The district court also read the entirety of Section 2.2 of the Supply Agreement to the jury. That section detailed the requirements of each party and the circumstances and conditions under which Autoliv could have refused to award a cover program to Venture. Those sections of the Supply Agreement outline that programs could be excluded from the Supply Agreement under specific circumstances such as where a customer directs that a specific cover supplier be used rather than Venture. Under these circumstances, we conclude that the district court properly instructed the jury that Autoliv bore the burden of proving that the exclusions excused it from allowing Venture

to bid on a contract.  The district court did not abuse its discretion in rejecting Autoliv's proposed jury instruction.

Autoliv's arguments regarding the evidentiary and jury related rulings have been considered and are found to be without merit.  We see no reason to disturb those rulings of the district court.

**III.**

In its cross-appeal, Venture argues that the district court erred by failing to award Venture prejudgment interest from the date of the filing of the complaint, regardless of the time the damages actually accrued.  In particular, Venture argues that Michigan Compiled Laws section 600.6013 explicitly grants prejudgment interest from the time of filing of the complaint and that statute controls the grant of prejudgment interest in this case.

Prejudgment interest is neither unique to patent law nor any other subject matter specific to the Federal Circuit's jurisdiction.  Therefore, in this case, the law of the Sixth Circuit applies.  See Biodex Corp. v. Loredon Biomedical, Inc., 946 F.2d 850, 855-56 (Fed. Cir. 1991).  Statutory interpretation is reviewed de novo.  United States v. Thomas, 211 F.3d 316, 319 (6th Cir. 2000).  In the Sixth Circuit, the issue of prejudgment interest is governed by the law of the forum state, which, in this case is Michigan.  The interpretation of a statute by a district court is reviewed de novo.  United States v. Thomas, 211 F.3d 316, 319 (6th Cir. 2000).

Autoliv argues that prejudgment interest in this case should not be calculated from the time the complaint was filed.  It cites to a portion of Michigan Compiled Laws section 600.6013(1) which states that

04-1486, -1488                                        10

[i]nterest is allowed on a money judgment recovered in a civil action, as provided in this section. However, for complaints filed on or after October 1, 1986, interest is not allowed on future damages from the date of filing the complaint to the date of entry of the judgment. As used in this subsection, "future damages" means that term as defined in section 6301.

But Autoliv relegates to a footnote the relevant information that under section 600.6301 the "future damages" discussed in section 600.6013 are "damages arising from personal injury." As this case is not one for damages for personal injury, the limits on prejudgment interest cited by Autoliv are irrelevant. Instead, as has been held by the Sixth Circuit in a breach of contact case,

[i]n Michigan, prejudgment interest is not discretionary as the statute provides in relevant part that "interest on a money judgment recovered in a civil action shall be calculated from the date of filing the complaint" and "shall be calculated on the entire amount of the money judgment, including attorney fees and other costs." The statute excepts from this proscription prejudgment interest on future damages for personal injuries.

Perceptron, Inc. v. Sensor Adaptive Mach., 221 F.3d 913, 922 (6th Cir. 2000) (citing Mich. Comp. Laws Ann. § 600.6013(6) (West Supp. 2000)). The Sixth Circuit in Perceptron further articulates that

[w]e are convinced Michigan law requires that prejudgment interest be calculated in this case on the entire judgment from the date that the complaint was filed. The prejudgment interest statute is remedial in nature and is to be construed liberally in favor of the prevailing party. The purpose of awarding statutory prejudgment interest is not only to compensate the prevailing party for the delay in the use of the money, but also to offset the costs of bringing the action and to provide an incentive for prompt settlement. The statute must be applied in accordance with its plain terms.

Id. at 923 (citations omitted). In view of the arguments made, we agree with Venture that damages in this case should have been calculated from the date the complaint was filed rather than when the damages accrued. See also Ayar v. Foodland Distribs., 698 N.W.2d 875, 877 (Mich. 2005) (finding the language of section 600.6013(8) "to be clear

and unambiguous"); <u>Morales v. Auto-Owners Ins. Co.</u>, 672 N.W.2d 849 (Mich. 2003) (holding that "the language of MCL 600.6013 unambiguously states that prejudgment interest is to be calculated from the date the complaint is filed").

**IV.**

In sum, we affirm the district court's rulings on the evidentiary and procedural issues, however, we conclude that the district court did err in calculating prejudgment interest. In this case, the proper date to calculate prejudgment interest is the date of filing the complaint. We, therefore, vacate the district court's calculation of prejudgment interest and remand the case to the district court to re-calculate the prejudgment interest consistent with this opinion, and subject to the outcome of the remand proceedings in the companion case.