RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0191p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

ANDREA BYERS,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA, INTERNAL REVENUE
SERVICE,

*Respondent-Appellee*.

No. 19-1893

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:18-cv-13570—Judith E. Levy, District Judge.

Argued:  June 10, 2020

Decided and Filed:  June 26, 2020

Before:  MOORE, SUTTON, and GRIFFIN, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:**  Daniel W. Weininger, ABRAHAM & ROSE, P.L.C., Farmington Hills,
Michigan, for Appellant.  Theodore Joshua Wu, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Daniel W. Weininger, ABRAHAM
& ROSE, P.L.C., Farmington Hills, Michigan, for Appellant.  Bruce R. Ellisen, John Schumann,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellant Andrea Byers[1] appeals the district court's order enforcing multiple IRS third-party summonses seeking her records and dismissing her petitions to quash these summonses. An IRS agent, seeking Byers's records in furtherance of an investigation into whether she is liable for internal revenue violations, served the summonses on four financial institutions. When Byers moved to quash these summonses, the government moved to dismiss Byers's petitions and to enforce the summonses, and the district court ruled in the government's favor in an oral decision. For the following reasons, we **AFFIRM** the decision of the district court.

## I. BACKGROUND

On August 28, 2018, Andrea Byers received notice from JP Morgan Chase Bank ("Chase") that IRS Agent Joseph Conroy had requested information in connection with the IRS's investigation into her then-husband, Lex Byers. R. 8-3 (Response to Mot. to Dismiss, Ex. B) (Page ID #151). The notice stated that "[t]he requested information includes information that relates to you." *Id.*[2] On October 5, Agent Conroy sent a letter to Byers informing her that she was under investigation for violating 26 U.S.C. §§ 6700 and/or 6701. R. 5-1 (Decl. of Joseph P. Conroy ("Conroy Decl.") ¶ 5) (Page ID #113). On the same day, Agent Conroy issued a document request to Byers, and requested an interview with her. *Id.* ¶ 6 (Page ID #113). Byers refused both requests. *Id.* On November 6, Byers received copies of IRS summonses that Agent Conroy had issued to Chase and Bank of America in connection with his investigation of her. R. 8-2 (Decl. of Andrea S. Byers ("Byers Decl.") ¶ 9) (Page ID #147). The summonses directed the banks to provide, for the years 2007 through 2018, "any and all documents in your possession or

---

[1]Like the parties' briefs, this opinion refers to the appellant as Byers, although she has "reverted to her maiden name – 'Andrea Schwartz.'" Appellant Br. at 3 n.1.

[2]Byers stated in a declaration before the district court that the Chase notice stated that Conroy had "summoned [her] bank records," R. 8-2 (Decl. of Andrea S. Byers ¶ 8) (Page ID #147), but the actual notice, which she attached as an exhibit, uses the language quoted above.

under your control related to . . . **Andrea Byers** and any other corporation or name **Andrea Byers** used during the [specified] period[] . . . **including but not limited** to: **INC'S & LLC'S, ETCETERA, Inc.**" and thirteen other entities. R. 1-2 (Pet. to Quash, Ex. A) (bold in original) (Page ID #15).

On November 15, Byers filed a petition to quash the summonses. R. 1 (Pet. to Quash at 1) (Page ID #1). Approximately one week later, Byers received copies of two additional IRS summonses, which Agent Conroy had issued to SunAmerica Trust Company and Pershing, LLC. R. 8-2 (Byers Decl. ¶ 10) (Page ID #147). On November 27, she filed a supplemental petition to quash these summonses. R. 3 (Supp. Pet. to Quash at 1) (Page ID #51). On December 6, Bank of America responded to the summons that Conroy served, but Conroy has not opened the envelope containing the bank's response due to Byers's pending petition to quash. R. 5-1 (Conroy Decl. ¶ 12) (Page ID #114). On March 5, 2019, the government moved the district court for dismissal of Byers's petitions and for enforcement of the four summonses. R. 5 (Mot. to Dismiss and to Enforce at 1) (Page ID #101). Accompanying the government's motion was a declaration by Agent Conroy providing background on the IRS's investigation of Byers. R. 5-1 (Conroy Decl. ¶¶ 1–15) (Page ID #112–15). On June 6, the district court held a hearing on the government's motion, granted it in an oral decision, R. 16 (Hr'g Tr. at 1, 32) (Page ID #238, 269), and entered judgment in favor of the government, thereby dismissing the case with prejudice. R. 11 (Judgment at 1) (Page ID #224). Byers timely appealed. R. 14 (Notice of Appeal at 1) (Page ID #236).

## II. STANDARD OF REVIEW

"A district court's order enforcing an IRS summons will not be reversed unless clearly erroneous." *United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 732 (6th Cir. 2006). Clear error exists if this court is "left with the definite and firm conviction that a mistake has been committed." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 402 (6th Cir. 1999). "Issues of statutory interpretation, however, are reviewed de novo." *Monumental Life*, 440 F.3d at 732.

## III.  DISCUSSION

This case deals primarily with the IRS's power to summon information from a third party about a named taxpayer.  Byers makes three arguments in support of her claim that the IRS overstepped the boundaries of its information-gathering authority.  First, she argues that the IRS was required to establish a "reasonable basis" for its investigation of her before its summonses could be enforced, and that the IRS failed to do so.  Second, she argues that the IRS did not make a prima-facie showing in support of enforcing its summonses.  Third, she argues that she carried her burden of showing that the IRS abused the district court's process in seeking enforcement of the summonses.  In view of the IRS's broad authority to collect information related to taxpayers' potential liabilities, each of Byers's arguments fails.

## A.  The IRS Authority to Issue Summonses

Our self-reporting system of taxation relies on honesty at the front end and investigation at the back end.  "There is legal compulsion, to be sure, but basically the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability."  *United States v. Bisceglia*, 420 U.S. 141, 145 (1975), *partially superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, § 1205, 90 Stat. 1520, 1699–1703 (1976).  Mindful of the possibility that some citizens may be less-than-forthcoming with their financial records, Congress "endowed the IRS with expansive information-gathering authority" to monitor compliance with the internal revenue laws.  *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984).  Section 7601 of the Internal Revenue Code permits the IRS to investigate "persons . . . who may be liable to pay any internal revenue tax," and section 7602 gives it the authority "[t]o examine any books, papers, records, or other data which may be relevant or material to [an] inquiry" into whether an individual has violated the internal revenue laws.  26 U.S.C. §§ 7601(a), 7602(a)(1).  "The purpose of the statutes is not to accuse, but to inquire."  *Bisceglia*, 420 U.S. at 146.

The power granted in § 7602(a)(1) amounts, in practical terms, to the power to issue summonses to acquire tax-related information.  What the IRS lacks is the power to compel compliance with these summonses, and for this it must turn to a federal district court.  *See* 26

U.S.C. §§ 7402(b), 7604(a). To obtain judicial enforcement of a summons, the IRS must make a prima-facie showing "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS] Commissioner's possession, and that the administrative steps required by the Code have been followed." *United States v. Powell*, 379 U.S. 48, 57–58 (1964). As the Seventh Circuit has aptly noted, this prima-facie burden "isn't much of a hurdle." *2121 Arlington Heights Corp. v. I.R.S.*, 109 F.3d 1221, 1224 (7th Cir. 1997). Most relevant for our purposes, it requires no explication of a factual basis for why the IRS has commenced an investigation in a particular case. *See* 13 Mertens Law of Fed. Income Tax'n § 47:121 ("Probable cause for the administrative inquiry is not required.").

The same standards apply when the IRS issues a summons not to the investigated taxpayer herself, but to a third party who may possess records related to the taxpayer. *See Monumental Life*, 440 F.3d at 730, 733. The only difference is that, in this scenario, the named taxpayer is entitled to notice that the summons has been issued, and has the right to intervene in the summons-enforcement proceeding. *See* 26 U.S.C. § 7609(a)–(b). It is in this statutory context that Byers's appeal takes place.

**B. The "Reasonable Basis" Requirement**

The novel issue that we consider here is whether the IRS must demonstrate a "reasonable basis" for believing that a named taxpayer has violated or may violate the internal revenue laws before the district court may enforce a third-party summons seeking information about this taxpayer. Byers acknowledges that this "reasonable basis" language stems from a different provision, subsection (f), of the third-party summons statute, entitled "Additional requirement in the case of a John Doe summons." 26 U.S.C. § 7609(f). This provision states that in order for the IRS to serve a third-party summons "which does not identify the person with respect to whose liability the summons is issued," the government must demonstrate that "there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law." 26 U.S.C. § 7609(f)(2). In other words, when the government seeks information about an unnamed person from a third party, it must show the district court that it has some reason to believe that this unnamed person

violated or may violate the law.  The other provisions of § 7609 do not explicitly set forth any requirements that the government must satisfy in order to enforce a third-party summons relating to a named person, besides giving proper notice to this person.

The fact that only the John-Doe provision of § 7609 includes the "reasonable basis" language forecloses Byers's argument that it constitutes a prerequisite for the enforcement of *any* third-party summons, whether involving a named or unnamed person.  "[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (internal quotation marks omitted).  In our view, if Congress had wished to impose a "reasonable basis" requirement on the IRS when it issued named third-party summonses, it would have done so in the text of the statute.

Byers maintains that this should not end our inquiry.  Despite the lack of any language in § 7609 applying the "reasonable basis" requirement to named third-party summonses, Byers says that this requirement does apply.  First, she argues that the Supreme Court's decision in *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985), supports her reading of the statute.  The question in *Tiffany Fine Arts* was whether the IRS had to comply with the abovementioned John-Doe procedures when it served summonses to investigate the tax liability of both named and unnamed parties.  *Id.* at 318.  In discussing John-Doe third-party summonses, the Court explained that "Congress determined that when the IRS uses its summons power not to conduct a legitimate investigation of an ascertainable target, but instead to look around for targets to investigate, the privacy rights of taxpayers are infringed unjustifiably." *Id.* at 320.  It continued:

> In response to this concern, §§ 7609(a) and (b) gave the real parties in interest—those actually being investigated—the right to intervene in the enforcement proceedings. Similarly, the John Doe requirements of § 7609(f) were adopted as a substitute for the procedures of §§ 7609(a) and (b). In effect, in the John Doe context, the court takes the place of the affected taxpayer under §§ 7609(a) and (b) and exerts a restraining influence on the IRS.

*Id.* at 321.  From this dicta, Byers discerns a recognition by the Supreme Court that "known taxpayers are entitled to the same *substantive* protections section 7609(f) affords to unknown

taxpayers." Appellant Br. at 13. This is so, Byers argues, "[b]ecause the Supreme Court treats section 7609(f) [the John-Doe summons provision] as a *procedural* 'substitute' for section 7609(a) [the notice provision for named summonses]." *Id.* Put another way, the fact that the John-Doe procedure is merely a substitute means, according to Byers, that named and unnamed third-party summonses "address identical *substantive* privacy concerns," *id.* at 12—namely, the concern that the government will simply "look around for targets to investigate," *Tiffany Fine Arts*, 469 U.S. at 320. If the substantive privacy concerns are the same, says Byers, then protections for taxpayers should be the same, whether they are named or unnamed in a third-party summons.

Yet *Tiffany Fine Arts* does not hold, let alone insinuate, any of this. The Supreme Court's holding was straightforward: "[When] the IRS serves a summons on a known taxpayer with the dual purpose of investigating both the tax liability of that taxpayer and the tax liabilities of unnamed parties, it *need not* comply with the requirements for John Doe summonses set out in § 7609(f), as long as all the information sought is relevant to a legitimate investigation of the summoned taxpayer." *Id.* at 324 (emphasis added); *see also United States v. Boulware*, 203 F. App'x 168, 170 (9th Cir. 2006). If the IRS need not comply with the John-Doe requirements for a dual-purpose summons, then it need not comply with these requirements for a summons with the sole purpose of investigating a named taxpayer. Moreover, the Court in *Tiffany Fine Arts* explained that "the interests at stake are very different" when "the summoned party [as opposed to an unnamed party] is itself under investigation." 469 U.S. at 321. Because a summoned party would have "a direct incentive to oppose enforcement," this would supply "sufficient protection against the evils that Congress sought to remedy when it enacted [the John-Doe provision]." *Id.* at 321–22. Although Byers was not the "summoned party" in this case, she was a noticed party, and her "vigilance and self-interest" are identical to—if not greater than—that of a hypothetical named party who is itself summoned by the IRS.**[3]** *Id.* at 321. Just as a summoned party is not

----

**[3]**As the Supreme Court noted in *Tiffany Fine Arts*, sometimes a summoned third-party may be uninterested in opposing enforcement. *See* 469 U.S. at 322 ("It is possible that the summoned party, even if it is itself being investigated, will not oppose enforcement, and that as a result the IRS might obtain some information that is relevant only to the liabilities of unnamed taxpayers."); Saltzman & Book, *IRS Practice and Procedure*, ¶ 13.03[1], 1999 WL 1050986, at *2 ("Often, a summoned third party, such as a bank, will not object to the summons."). A named taxpayer, like Byers, might therefore have an even greater interest in opposing enforcement than, for example, a third party whose personal records were not sought by the government.

entitled to the extra procedural protections set forth in § 7609(f), Byers—as a named party who received notice that the IRS was investigating her and who timely intervened—was clearly able to fend for herself. Relatedly, the Court in *Tiffany Fine Arts* reasoned that cases involving named parties simply do not implicate Congress's concern with an aimlessly roving IRS: "[B]y definition, the IRS is not engaged in a 'fishing expedition' when it seeks information relevant to a legitimate investigation of a particular taxpayer." *Id.* The Supreme Court understood § 7609(f) as an antidote to the IRS searching for parties to target, rendering the provision inapplicable when the IRS has identified a particular party by name, such as Byers.

It is true that simply including the name of a targeted party may be a poor proxy for whether the government is engaged in a "legitimate investigation." *Id.* Indeed, in other doctrinal arenas, courts expressing concern with "fishing expeditions" speak of the investigating or complaining party's failure to adduce "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), not of the investigating or complaining party's failure to identify which party it is investigating or suing. *See, e.g.*, *Fed. Trade Comm'n v. Am. Tobacco Co.*, 264 U.S. 298, 305–06 (1924) (stating, in a case involving the Federal Trade Commission and known investigated parties: "Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire, and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime.") (citing *Interstate Commerce Comm'n v. Brimson*, 154 U.S. 447, 479 (1894)). Yet in the context of a summons targeting a named taxpayer, as the Eighth Circuit has observed, "the Secretary or his delegate has been specifically licensed to fish by § 7602." *United States v. Giordano*, 419 F.2d 564, 568 (8th Cir. 1969).[4] With respect to third-party summonses in particular, the Supreme Court in *Tiffany Fine Arts* explained clearly that Congress had "only one specific . . . worry: that the party receiving a summons would not have a sufficient interest in protecting the privacy of the records if that party was not itself a

---

[4]In fact, as we explain *infra* Part III.D, the Supreme Court has cautioned against turning the enforcement proceeding into an opportunity for the *taxpayer* to go on a fishing expedition into the government's potential misconduct in issuing a summons. *United States v. Clarke*, 573 U.S. 248, 254–55 (2014) (cautioning against "turning every summons dispute into a fishing expedition for official wrongdoing").

target of the summons."  469 U.S. at 320.  Accordingly, Congress provided extra protections—such as the "reasonable basis" requirement—only in John-Doe cases, when investigated taxpayers could not contest the summonses themselves.  *See* H.R. REP. 94-658, at 311 (1975) ("[T]he committee does not intend that the John Doe summons is to be available for purposes of enabling the Service to engage in a possible 'fishing expedition.'"); S. REP. 94-938 (I), at 373 (1976) (same).

Next, Byers relies on *Powell*, and the cases it cites, as establishing a general "reasonableness test" for the enforcement of agency summonses.  Reply Br. at 1–2.  This assertion is without support.  Byers ignores that *Powell* favorably mentioned "the general rejection of probable cause requirements in like circumstances involving other agencies." 379 U.S. at 57.  For example, *Powell* recounted how in *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), the Court had permitted the Federal Trade Commission to investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."[5]  *Powell*, 379 U.S. at 57 (quoting *Morton Salt*, 338 U.S. at 642–43).  *Powell* did not "confirm[] that the agency must articulate some reasonable basis to gain judicial approval of its summonses."  Reply Br. at 3.  Neither *Tiffany Fine Arts* nor *Powell* supports Byers's atextual reading of the statute.

Other factors counsel against Byers's argument.  One is the Supreme Court's general reluctance to interfere with the IRS's summons power:  "While § 7602 is 'subject to the traditional privileges and limitations,' any other restrictions upon the IRS summons power should be avoided 'absent unambiguous directions from Congress.'"  *Arthur Young & Co.*, 465 U.S. at 816 (quoting *United States v. Euge*, 444 U.S. 707, 714 (1980), and *Bisceglia*, 420 U.S. at 150, respectively)).  No such "unambiguous direction" is present here.  Similarly, a "reasonable basis" burden would be at odds with our interpretation of *Powell* as requiring exceedingly little from the IRS in order to carry its initial burden in enforcing a summons.  *See, e.g.*, *Kondik v. United States*, 81 F.3d 655, 656 (6th Cir. 1996) (prima-facie case for enforcement "is generally

[5]Byers emphasizes the reference to "suspicion" in this sentence, Reply Br. at 3, but ignores that the rest of the sentence apparently permits the agency to investigate even when it has no suspicion of illegality, and "just . . . wants assurance" that the law is not being violated, *Morton Salt*, 338 U.S. at 643.

made by the submission of an affidavit from the agent who issued the summonses"); *United States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (same); *United States v. AS Holdings Grp., LLC*, 521 F. App'x 405, 409 (6th Cir. 2013) ("The IRS may meet this 'minimal burden' by submitting an affidavit from the agent issuing the summons.") (quoting *United States v. Pragovich*, 363 F. App'x 313, 314 (6th Cir. 2009) (order)).  And although we have never ruled on the precise issue that Byers raises, we have recognized that the John-Doe procedures are distinct from the rest of § 7609.  *See United States v. Ritchie*, 15 F.3d 592, 596 (6th Cir. 1994) ("If the taxpayer whose tax liability is being investigated is a known, named individual, the IRS must give notice to that person that a summons has been issued to the third-party recordkeeper.  *On the other hand*, if the identity of the party under investigation is unknown, notice need not be given (for obvious reasons), *but other requirements apply to these 'John Doe' summonses*.") (internal citations omitted) (emphases added).

None of this leaves a named taxpayer without recourse to challenge the propriety of an investigation, as discussed further below.  *See United States v. Gertner*, 65 F.3d 963, 968 (1st Cir. 1995) ("Though a conclusory affidavit is enough to satisfy the government's burden at the first tier of the framework [the prima-face showing], it can come back to haunt the proponent if it is not later supplemented by more hearty fare once the challenger succeeds in scaling the second tier [the abuse-of-process tier].") (internal citations omitted); H.R. REP. 94-658, at 309 ("[T]he committee intends that the noticee would have standing to raise other issues which could be asserted by the third-party record keeper, such as asserting that the summons is ambiguous, vague or otherwise deficient in describing the material requested, or that the material requested is not relevant to a lawful investigation.").  At the prima-facie stage, however, the IRS's burden is minimal and inconsistent with a "reasonable basis" requirement.

There is no shortage of reasons to reject Byers's argument.  But her argument, we acknowledge, has intuitive appeal—"Shouldn't the government have to give a reason why it wants my information?"—and merits this fulsome response.  In all, Byers has raised a colorable policy argument, but not a legal one.  "Simply stated, the IRS is not required to comply with the 'John Doe summons' requirements, where the summons relates to an investigation of a named

party." 35 Am. Jur. 2d Federal Tax Enforcement § 55. The district court did not err in rejecting Byers's argument.

## C. The Prima-Facie Showing

Byers next argues that apart from whether the IRS was required to establish a "reasonable basis" for its investigation, it has failed to satisfy the four-part *Powell* test discussed *supra* Part III.A. We consider each part of the test below, and conclude that the government carried its burden.

### 1. Legitimate purpose

The Supreme Court has cautioned that "those opposing enforcement of a summons do bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service." *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978), *superseded by statute on other grounds*, Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 333, 96 Stat 324, 622–23 (1982); *see also United States v. Alpha Med. Mgmt., Inc.*, No. 96-5825, 1997 WL 359065, at *2 (6th Cir. June 26, 1997) (noting the "heavy burden" faced by an entity seeking to quash an IRS summons). The declared purpose of the IRS's investigation in this case was as follows: "[T]o determine whether Andrea Byers, herself or in association with an entity, is liable for penalties under 26 U.S.C. §§ 6700 and/or 6701 in connection with the organization or promotion of abusive tax shelters and/or aiding and abetting the understatement of another person or entities' tax liability." R. 5-1 (Conroy Decl. ¶ 4) (Page ID #112–13).

We have never established—and do not establish in this case—what precisely must be contained in an IRS agent's declaration in order to satisfy the legitimate-purpose prong of the *Powell* test, nor whether an ipse dixit would suffice.[6] At the enforcement hearing before the district court, Byers asked whether it would have been sufficient for Agent Conroy simply to

---

[6]Most of the cases relied upon in the parties' briefs are either district-court cases, *see, e.g.*, *Nevius v. United States*, 257 F. Supp. 3d 9, 12 (D.D.C. 2017), or circuit-court cases that are not binding on this court, *see, e.g.*, *United States v. AS Holdings Grp., LLC*, 521 F. App'x 405, 409 (6th Cir. 2013) (summoned party forfeited argument on legitimate-purpose prong); *United States v. Gertner*, 65 F.3d 963, 968 (1st Cir. 1995) (out-of-circuit analysis of legitimate purpose).

aver, "I'm conducting an investigation to determine whether Ms. Byers violated the tax code." *See* R. 16 (Hr'g Tr. at 10) (Page ID #247). We need not weigh in on this hypothetical. In light of the government's minimal burden at this stage, the district court did not clearly err in concluding that the declared purpose here was legitimate. The declaration is sufficient to show that the summons will be properly used for a civil investigation, rather than for an improper purpose, such as an ongoing criminal investigation. *See United States v. Ahee*, 5 F. App'x 342, 353 (6th Cir. 2001) ("Given . . . the fact [that] the summonses were utilized to gather evidence, not justify a previous determination to prosecute, the trial court did not err in concluding the IRS had a legitimate purpose for the use of administrative summonses under 26 U.S.C. § 7206."); *Pragovich*, 363 F. App'x at 314 ("We find no clear error here, however, as the summons could be used to determine whether Pragovich was subject to penalties under 26 U.S.C. §§ 6700-6701 for, among other things, advising others with respect to preparation of documents understating their tax liability.").

## 2. Relevance

Paragraph 14 of Agent Conroy's declaration, which describes how the financial information sought by the summonses will assist the investigation, is sufficient to establish relevance. Congress has authorized the IRS "[t]o examine any books, papers, records, or other data which *may be relevant* or material" to an investigation, 26 U.S.C. § 7602(a)(1) (emphasis added), and the Supreme Court has clarified that "even *potential* relevance" is sufficient, *Arthur Young & Co.*, 465 U.S. at 814. "[T]he Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense." *Id.* Even if four summonses were more than necessary to conduct the investigation in this case, the Supreme Court "ha[s] never held . . . that the IRS must conduct its investigations in the least intrusive way possible." *Tiffany Fine Arts*, 469 U.S. at 323. Byers does not explain how this case represents an "exceptional circumstance where automatic reliance upon an agent's affidavit is not adequate." *Monumental Life*, 440 F.3d at 736. Unlike in *Monumental Life*, here the IRS does not seek a "voluminous amount of highly sensitive proprietary information," the agency has not opposed a protective order, and the lower court had no concerns with the relevance of the summoned information. *Id.*

### 3. Already in possession of the IRS

Agent Conroy's declaration states that besides the information contained in Bank of America's sealed response, the rest of the information sought in the summonses is "not already in the possession of the Internal Revenue Service." R. 5-1 (Conroy Decl. ¶ 13) (Page ID #114). Byers suggests that the information sought in the summons served on Chase is already in the IRS's possession, because the IRS acquired this information through the summons it served on Chase during its investigation into Byers's ex-husband.[7] Yet Byers does not explain what was contained in that summons. This omission, she says, exists "because Conroy never served her with a copy of [the summons] as required under section 7609(a)(1)-(2)." Appellant Br. at 21. In other words, Byers argues that she is hamstrung from contesting the already-in-possession prong of the *Powell* test because the IRS has improperly denied her the knowledge of what information it has.

The relevant statutory section, however, requires notice of the issuance of a summons only to "any person . . . who is identified in the summons," 26 U.S.C. § 7609(a)(1), and Byers does not claim that she was identified *in the summons* served in connection with her ex-husband's case. As Byers's own exhibit demonstrates, the notification that Byers received in 2018 during this prior investigation states only that "[t]he requested information [by the IRS] includes information that *relates* to you." *See, e.g.*, R. 8-3 (Response to Mot. to Dismiss, Ex. B) (Page ID #151) (emphasis added). Because she was not apparently entitled to notice under the third-party summons statute, Byers thus fails to explain away her inability to identify what information is already in the IRS's possession.

### 4. Procedural compliance

Byers's first argument regarding the government's alleged failure to comply with administrative procedures is that "unknown prospective investigation targets" other than Byers are the "sole" focus of the investigation, so the government should have followed the John-Doe procedures set forth in § 7609(f). Appellant Br. at 21. But she fails to rebut the declaration by

---

[7]Byers raises no argument related to Agent Conroy's possession of information he sought from the other three entities (Bank of American, SunAmerica Trust Company, and Pershing, LLC). *See* Appellant Br. at 21.

Agent Conroy that Byers is, in fact, the focus of the investigation.  R. 5-1 (Conroy Decl. ¶ 4) (Page ID #112–13).  Even if the IRS were investigating both Byers *and* unnamed entities, *Tiffany Fine Arts* makes it clear that the government need not comply with § 7609(f) regarding named persons in order to enforce a dual-purpose third-party summons.  *See* 469 U.S. at 324.

Byers further argues that the various entities identified in the summonses were entitled to notice pursuant to § 7609(a)(1), but nowhere explains why she has standing to raise this argument on behalf of another entity, nor how she knows that "the government failed to notify any of these entities about the summonses at issue."  Appellant Br. at 23–24.  Assuming that she does have standing as the registered agent or officer of each of the entities listed in the summonses, then as the government explains, this fact makes notice to her sufficient to provide notice to the entities.  Appellee Br. at 31–32 (citing *United States v. Held*, 435 F.2d 1361, 1365 (6th Cir. 1970)).

For the foregoing reasons, the district court's determination that the government has satisfied the four *Powell* factors was not clearly erroneous.

## D.  Byers's Abuse-of-Process Argument

The IRS's satisfaction of the prima-facie burden is not the end of the case.  "Once th[e] [prima-facie] showing is made, the burden shifts to the taxpayer to demonstrate that enforcement of the summons would be an abuse of the court's process."  *Will*, 671 F.2d at 966.  "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."  *Powell*, 379 U.S. at 58.  The burden to demonstrate an abuse of process "is a heavy one."  *Kondik*, 81 F.3d at 656.  In order to carry it, a petitioner must set forth "specific facts and evidence to support [its] allegations."  *Cypress Funds, Inc. v. United States*, No. 99-3840, 2000 WL 1597833, at *4 (6th Cir. Oct. 20, 2000) (alteration in original) (quoting *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985)).

In support of her abuse-of-process allegations, Byers submitted a declaration, which professes her innocence and states that Agent Conroy has never informed her what she or her ex-

husband may have done to violate the law.  R. 8-2 (Byers Decl. ¶¶ 4, 20–22) (Page ID #147–49).  Yet nowhere in the declaration does Byers explain what nefarious purpose the IRS has for investigating her.  Her statements do not carry the "heavy" burden of demonstrating an abuse of process, and the district court did not clearly err in rejecting this argument.

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.